IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


CHERISE MONTGOMERY, Independent    )
Administrator of the Estate of     )
Brandon J. Haywood, deceased,      )
                                   )
Plaintiff,                         )
                                   )
vs.                                )    NO. 2:02-CV-209
                                   )
VILLAGE OF LAKE STATION, et al.,   )
                                   )
Defendants.                        )


## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed by Defendants, Bradley Shrader, Peter J. Baum Jr., Scott A. Garzella, Village of Lake Station, Lake Station Police Department, and Richard Arnold, on May 31, 2006. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiff's claim of unreasonable seizure and unconstitutional use of excessive force in violation of section 1983 against Officer Baum and Garzella (Count I), Plaintiff's claim of unreasonable seizure and unconstitutional use of force in violation of section 1983 against Officer Baum (Count II), Plaintiff's claim of false arrest in violation of section 1983 against Officers Shrader, Baum, and Garzella (Count III), Plaintiff's failure to train and supervise claim against Defendants, Village of Lake Station, the Lake

Station Police Department, and Chief Richard Arnold (Count IV),
Plaintiff's wrongful death claim against Officers Shrader, Baum, and
Garzella (Count V), Plaintiff's survival claim against Officers
Shrader, Baum and Garzella (Count VI), Plaintiff's intentional
infliction of emotional distress claim against Officers Shrader, Baum,
and Garzella (Count VIII), Plaintiff's assault and battery claim
against Officers Shrader, Baum, and Garzella (Count IX), Plaintiff's
claims for punitive damages against Defendants, Village of Lake
Station, the Lake Station Police Department, Chief Arnold, Officers
Baum and Garzella, and Officer Shrader in his official capacity, and
Plaintiff's claims against Chief Arnold, individually.  The Clerk is
**ORDERED** to **DISMISS** those claims **WITH PREJUDICE**.  The motion is **DENIED**
as to Plaintiff's claim of unreasonable seizure and unconstitutional
use of excessive force in violation of section 1983 against Officer
Shrader (Count I), Plaintiff's family expense claim for medical,
funeral and burial expenses (Count VII), and Plaintiff's claim for
punitive damages against Officer Shrader in his individual capacity.
These claims **REMAIN PENDING.**


BACKGROUND

     Plaintiff, Cherise Montgomery, is the mother of Brandon J.
Haywood and the independent administrator of Haywood's estate.
Plaintiff's section 1983 claims stem from an encounter between
Officers Shrader, Baum, and Garzella, and Brandon Haywood on May 27,

2002, which resulted in the death of Haywood.

Plaintiff filed a nine count complaint on May 16, 2002, against the six named Defendants: the Village of Lake Station, Lake Station Police Department ("LSPD"), Richard Arnold (individually and as Chief of LSPD), and Officers Bradley Shrader, Peter Baum, and Scott Garzella (in both their individual and official capacities). The complaint alleges the following claims: unreasonable seizure and unconstitutional use of excessive force in violation of 42 U.S.C. section 1983 against Defendants Shrader, Baum and Garzella (Count I); unreasonable seizure and unconstitutional use of force in violation of section 1983 against Defendant Baum (Count II); unlawful arrest in violation of section 1983 against Defendants Shrader, Baum and Garzella (Count III); failure to train and supervise in violation of section 1983 against Defendants Village of Lake Station, LSPD, and Chief Richard Arnold (Count IV); wrongful death against Defendants Shrader, Baum and Garzella (Count V); a survival claim against Defendants Shrader, Baum and Garzella (Count VI); a family expense claim for medical, funeral and burial expenses, against Defendants Shrader, Baum and Garzella (Count VII); intentional infliction of emotional distress against Defendants Shrader, Baum and Garzella (Count VIII); and assault and battery against Defendants Shrader, Baum and Garzella (Count IX).

Defendants have moved for summary judgment on all counts alleged in the complaint.

-3-

DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620

-4-

(7th Cir. 1989).   "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"   *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial."   *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.   In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 323.

This Court is aware of the Supreme Court's admonitions directing resolution of qualified immunity at the earliest possible stage of litigation.   *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Early resolution of the qualified immunity issue is optimal because the qualified immunity defense protects public officials "not simply

-5-

from liability, but also from standing trial." *Johnson v. Jones*, 515 U.S. 304, 312 (1995) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985)). However, the qualified immunity determination should be submitted to the jury where material factual disputes preclude resolution of the issue as a matter of law. *See, e.g., Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993) (citations omitted) (emphasis in original) ("As a general rule, the question of qualified immunity is ordinarily one of law for the court . . . . This does not mean, however, that courts may always decide questions of qualified immunity on summary judgment. If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.").


Factual Background

     Plaintiff and Defendants' versions of the events surrounding the encounter between Haywood and Officers Shrader, Baum and Garzella on May 27, 2002, differ greatly. The testimony of those who witnessed the occurrence conflict in several important respects. Consequently, the Court will attempt to set forth the material facts recited by the

parties by enumerating the accounts of each witness.


Testimony of John Hunter

While driving his vehicle around 11:00 a.m. on May 27, 2002, Hunter saw a person with a hood walking in the middle of the street, down Central Avenue.   According to Hunter, the man was waving his arms, screaming, and hollering.   When Hunter rolled down his window to ask the person (Haywood), if he was okay, Hunter noticed Haywood was holding two bottles in his hands.   Haywood then approached Hunter's car, yelled "Nobody has power over me," and hit Hunter's car with a bottle.   (Hunter Dep., p. 33.)   Hunter then drove away. Plaintiff's counsel attacks Hunter's credibility, pointing out inconsistencies in Hunter's testimony.


Testimony of Officers Shrader, Baum, and Garzella

Officers Shrader, Baum, and Garzella jointly responded to a dispatch call stating that a male was walking down the center of Central Avenue causing traffic problems.   When they arrived at the scene, they saw Haywood walking down the middle of the street. Officer Baum pulled alongside Haywood, rolled down his window, and asked Haywood to leave the road.   Haywood did not respond.   Officer Baum then activated his siren, but Haywood still had no response, and continued walking down the road.

Officers Baum and Shrader stopped their cars and approached

Haywood on foot.  According to Officer Baum, Haywood had a bottle in each hand and the bottle in Haywood's right hand was broken, with jagged edges.  The officers instructed Haywood to leave the road, but Haywood continued to ignore the officers.

Officer Baum tried to grab Haywood to get him off of the road, putting him in a "bear hug," but Haywood shook off Officer Baum and continued down the road.  While Officer Baum tried to wrestle Haywood to the ground, Officer Shrader circled in front of Haywood.  Officer Shrader then noticed Haywood had a broken bottle in his left hand.[1]

According to Officer Shrader, he positioned himself 20-25 feet in front of the suspect, and repeatedly told Haywood to drop the bottles and stop.  All the officers testified that Haywood started to increase his pace, so Officer Shrader "back-pedalled" - or walked backwards, while continuing to face Haywood.  Haywood began approaching at a faster, aggressive pace, thrusting or jabbing the bottles in Officer Shrader's direction.  The broken bottle was large, with pointy edges, and it looked like a knife. Officer Shrader continued giving commands to the suspect such as stop, drop the bottles, and get on the ground.  (Baum Dep., p. 147; Garzella Dep., p. 24; Shrader Dep., pp. 102, 105, 106.)  All three officers heard Haywood say "your weapons will not prevail against my God."  (Shrader

---

[1]This differs from the accounts of Officers Baum and Garzella that the broken bottle was in Haywood's right hand. Nevertheless, all three officers testified during their depositions that Haywood was carrying two bottles, and all three testified that one of the bottles was broken.

Dep., p. 104, Baum Dep., p. 152; Garzella Dep., p. 30.)

When Haywood got within approximately 10 feet of Officer Shrader, Officer Shrader raised his gun and pointed it at Haywood.  According to Officer Baum, Officer Shrader told Haywood, "stop, or I am going to shoot."  Haywood continued to approach Officer Shrader at an increasing rate.  Officer Shrader could no longer back-peddle away, and Haywood's bottles were 3 feet from Officer Shrader's gun.  Officer Shrader testified he feared for his life, and he fired two shots. Haywood fell on the ground face first and died.

Testimony of Kevin Gaskin

Gaskin, a tow truck driver who witnessed the shooting, was traveling westbound on Central Avenue when he heard sirens and noticed police car lights ahead of him.  He was concerned about traffic entering the police situation, so he pulled his flatbed tow truck across Central Avenue so that his vehicle was blocking the westbound lanes.  Gaskin then watched the scene unfold.  He testified that he was approximately 2-3 blocks from the police officers and Haywood, and that by the time he exited his truck, he was less than one block from Officer Shrader.  According to Gaskin, Haywood was walking eastbound on Central, down the middle of the yellow stripes, towards Officer Shrader, who was walking backwards.  According to Gaskin, Haywood was walking down Central Avenue straight down the middle of the yellow line with his hands in his pockets, not responding to anything being

said.

Gaskin specifically testified that Haywood's hands remained in his pockets the entire time, until after Haywood was shot and fell to the ground.  Then, the officers used their feet to kick Haywood's hands out of his pockets.

According to Gaskin, when he first saw Officer Shrader and Haywood, they were about 10 feet apart, and they basically kept the same distance the entire time.  Gaskin described Haywood's pace as normal, and not in a hurry.  According to Gaskin, prior to being shot, Haywood "had not changed the pace of his mannerism or anything.  He had just proceeded exactly how he had since the whole thing had started . . . hands in his pockets, unresponsive, not speaking back, no shouting coming from the individual." (Gaskin Dep., pp. 40, 44, 48.)  Gaskin testified that Haywood did not have any bottles in his hands at the time of the shooting.


Testimony of Michael Zellers

Michael Zellers was another witness who was in his car at the time of the incident.  As he approached Central Avenue, Zellers saw Haywood walking towards Officer Shrader, with the other two officers approaching Haywood from the side.  Zellers saw something in Haywood's hand (but he could not tell what it was), and he saw Haywood walking at a fast pace towards Officer Shrader.  He watched Haywood walk toward Shrader for about 50 feet at a continued, systematic, steady

pace.  According to Zellers, Officer Shrader and Haywood stayed about the same distance apart (approximately 5 feet), the entire time. Zellers did not hear Haywood say anything.

### Testimony of Thomas Henry Forrest

Thomas Henry Forrest was standing on the porch of his house at the time of the incident.  He gave a statement to the police on the day of the occurrence, in which he stated that he heard Officer Shrader tell Haywood to take his hands out of his pockets, then immediately heard two shots.  However, during his deposition, Forrest testified differently, saying he heard the officer only say "take your" before the two shots.  (Forrest Dep., pp. 50-52.)  Forrest testified at his deposition that he never said he heard Officer Shrader tell Haywood to get his hands out of his pockets.

Forrest testified in his deposition that he did not hear Officer Shrader warn that he was about to shoot prior to discharging his gun. According to Forrest, Officer Shrader and Haywood walked at a "good steady pace," approximately five feet apart, and he never noticed anything in Haywood's hands.  (Forrest Dep., pp. 46-47.)

### Plaintiff's Federal Claims and Qualified Immunity

Plaintiff seeks relief under 42 U.S.C. section 1983, which provides a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be

subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." Plaintiff characterizes her federal claims as those for unreasonable seizure, unconstitutional use of excessive force, and unlawful arrest.[2] Defendants assert qualified immunity as a defense to these claims.  As discussed below, the critical inquiry in determining whether Officers Shrader, Baum and Garzella are entitled to qualified immunity is whether their actions were reasonable under the circumstances known to them at the time.

Qualified immunity shields officers from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).  Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) (citing *Marshall v. Allen*, 989 F.2d 787, 791 (7th Cir. 1993); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[2]Plaintiff's complaint alleges she is entitled to relief because the shooting of Haywood was an unreasonable seizure and unconstitutional use of force (Count I), because Officer Baum's attempt to wrestle Haywood to the ground was an unreasonable seizure and an unconstitutional use of force (Count II), and because the wrestling, shooting, and detaining of Haywood was a false, or unlawful arrest (Count III).

Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1986).

A 2-part test determines whether a government official is entitled to qualified immunity in a civil suit under section 1983. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The threshold inquiry is whether, taken in the light most favorable to Plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201 (citing *Siegert v. Gilley*, 500 U.S. 226 (1991)). If the facts as alleged reveal no constitutional violation, the inquiry ends and the officer will prevail on the merits of the case. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body); *Eversole*, 59 F.3d at 717 ("[t]he first part of this two-part test is a threshold issue that can defeat entirely a claim of qualified immunity. If a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of constitutional rights, then the plaintiff's claim fails.").

If, on the other hand, the facts alleged would amount to a constitutional violation, the Court next examines "whether the right was clearly established." *Saucier*, 533 U.S. at 201. The rationale behind this is "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on

-13-

qualified immunity is appropriate." *Id.* at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne v. Pauley*, 337 F.3d 767, 775-76 (7th Cir. 2003) (citing *Saucier*, 533 U.S. at 202). During this 2-step evaluation process, the Court will bear in mind that the doctrine of qualified immunity leaves "ample room for mistaken judgments" by police officers. *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

Regarding the claim of unreasonable seizure, an officer is entitled to qualified immunity "if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). The Court's consideration of probable cause and qualified immunity are closely related:

> Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an "additional layer of protection against civil liability" if a reviewing court finds that they did not have probable cause.

*Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (quoting *Hughes v. Meyer*, 880 F.2d 967, 970 (7th Cir. 1989)). The officer's subjective beliefs are immaterial in asserting protection by qualified

-14-

immunity.   Rather, "[o]fficers are entitled to summary judgment on qualified immunity grounds if their actions were not objectively unreasonable at the time they were taken." *Humphrey*, 148 F.3d at 725.

The Court's analysis of Plaintiff's excessive force claim is similar to its analysis of the unreasonable seizure claim, because both involve an objectively reasonable test.  It is well settled that "*all* claims that law enforcement officers have used excessive force - deadly or not -  in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).  While "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the Fourth Amendment prohibits the use of excessive force during the execution of a seizure.  *Graham*, 490 U.S. at 395-96.

A "police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006) (quoting *Payne*, 337 F.3d at 778 (citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).  In evaluating whether the force used was excessive, the fact-finder must balance the intrusion to the individual with the government interests at stake. *Graham*, 490 U.S. at 396.  In so doing, the Court must view the

-15-

circumstances "from the perspective of a reasonable officer on the scene." *Id.*

The use of deadly force will be deemed objectively reasonable "where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or to others." *Plakas v. Drinski*, 811 F.Supp. 1356, 1362 (N.D. Ind. 1993) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* The existence of probable cause is a question for the jury only "if there is room for a difference of opinion." *Ford v. Childers*, 855 F.2d 1271, 1275 (7th Cir. 1988) (citations omitted).


Unreasonable Seizure/Excessive Force - Shots

With regard to Plaintiff's claim of unreasonable seizure and use of deadly force from the shots fired by Officer Shrader (Count I), this Court finds there is a material factual dispute as to the objective reasonableness of Officer Shrader's actions.  Officer Shrader and the two other officers claim Haywood said "your weapons will not prevail against my God" (Shrader Dep., p. 104; Baum Dep., p. 152; Garzella Dep., p. 30), as Haywood approached Officer Shrader

-16-

rapidly, that Haywood started to increase his pace and close the distance between himself and the officer, and that Haywood was thrusting at Officer Shrader with a broken bottle about 3 feet from Officer Shrader's outstretched gun. In contrast, according to the testimony of the lay witnesses (Gaskin, Zellers, and Forrest), Haywood was walking at a steady, normal pace, he stayed approximately the same distance away from Officer Shrader, Haywood did not say anything, and he did not have anything in his hands. Additionally, Gaskin testified with specificity during his deposition that Haywood had his hands in his pockets, and the officers kicked Haywood's hands out only after the shooting occurred.

Although the parties attempt to attack the credibility and reliability of each other's witnesses (for example, Defendants argue that Gaskin did not have a good view of the events), these are determinations best left for the factfinder. *See Morfin v. City of East Chicago,* 349 F.3d 989, 999 (7th Cir. 2003) (reversing summary judgment on excessive force claim where genuine issue of material fact existed concerning whether there was probable cause for arrest); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987) ("Credibility normally cannot be determined by summary judgment."). Resolving all conflicts in the evidence in Plaintiff's favor, and

-17-

viewing the evidence in the light most favorable to Plaintiff, as this Court must on summary judgment, the testimony of Gaskin, Zellers and Forrest raise genuine issues of material fact as to whether Officer Shrader used unreasonable force when he shot Haywood.

This testimony is also sufficient to defeat Officer Shrader's claim of qualified immunity at this summary judgment stage. No reasonable officer could have believed that the Constitution would permit an officer to shoot a person who was walking down the middle of a street at a steady pace, not saying anything, unarmed, with his hands in his pockets. Accordingly, qualified immunity is not available at this stage in the case. *See Morfin*, 349 F.3d at 1000 n.13 (reversing summary judgment in a false arrest case where the parties disputed facts at the heart of the qualified immunity issue, noting the Court "cannot determine as a matter of law, what predicate facts exist to decide whether or not the officers' conduct clearly violated established law")*; Fidler*, 428 F. Supp.2d at 865 (denying summary judgment where one version of events presented triable issues of fact as to whether the plaintiff's Fourth Amendment rights were violated); *see also Ludwig v. Anderson*, 54 F.3d 465, 474 (8th Cir. 1995) (quotation omitted) ("Although it is a question of law whether particular facts entitle police officers to summary judgment based on qualified immunity, where, as here, there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment."); *Arnott*, 995 F.2d at 124 (holding

genuine issue of material fact as to conduct engaged in by officers precluded summary judgment for officers on ground of qualified immunity).

As in *Morfin*, this Court cannot determine what facts existed surrounding the occurrence at issue.  Specifically, factual disputes surrounding Haywood's conduct bear directly upon whether it was objectively reasonable for Officer Shrader to believe he acted in compliance with clearly established law.  Therefore, the Court cannot decide at this stage of the proceedings whether Officer Shrader's use of force clearly violated established law.  In sum, Plaintiff has presented sufficient evidence to withstand Defendants' motion for summary judgment against Officer Shrader based on a qualified immunity defense.[3]

### Unreasonable Seizure/Excessive Force - Wrestling Attempt

With regard to Plaintiff's claim of unreasonable seizure and use

---

[3]Although the complaint sets forth a claim of excessive force with regard to the shots against Defendants Shrader, Baum, and Garzella in Count I, Plaintiff has apparently abandoned this claim as to Officers Baum and Garzella.  (See Pl.'s Resp., p. 25, arguing only that Officer Shrader had probable cause to use deadly force.) The Court agrees, as "Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994).  Because there is no evidence that Officers Baum or Garzella caused or participated in the actual shooting, the Court grants Defendants' motion for summary judgment as to the section 1983 claims against Officers Baum and Garzella in Count I.

of excessive force when Officer Baum attempted to wrestle Haywood to the ground (Count II), the Court finds that summary judgment is appropriate.    In analyzing Officer Baum's actions under the objectively reasonable test set forth in *Graham*, and construing the facts in the light most favorable to Plaintiff, Officer Baum acted reasonably in attempting to wrestle Haywood to the ground in a bear hug.  *Graham*, 490 U.S. at 397.

The reasonableness of force used must be judged from the perspective of a reasonable officer at the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  Although there are many disputed facts in this case, it is undisputed that Haywood was walking down the middle of a busy street, disrupting traffic, and he failed to respond to police lights, sirens, or verbal commands to leave the roadway.  An officer may detain a person who he believes in good faith has committed an infraction or ordinance violation. IND. CODE § 34-28-5-3.  As such, because Haywood was committing a traffic violation by walking down the middle of Central Avenue, and because he failed to respond to other attempts to get him to leave the roadway, the Court finds that Officer Shrader acted reasonably when he attempted to wrestle Haywood to the ground.  Summary judgment is therefore properly granted in favor of Defendants on this claim.

<u>False Arrest</u>

An unlawful arrest claim asserts a violation of the Fourth Amendment right against unreasonable seizures of a person, and probable cause is the clearly established standard for making an arrest.  Here, the Court must determine whether material issues of fact remain as to the objective reasonableness of Defendants' belief that they had probable cause to arrest Plaintiff.  Setting aside the many disputed facts in this case for the moment, the undisputed fact that Haywood was walking down the center of Central Avenue gave the officers probable cause to arrest Haywood.

The officers had probable cause to believe Haywood was obstructing traffic.  Indiana law prohibits a pedestrian from walking along and upon a roadway if a sidewalk is provided, and the use of the sidewalk is practicable.  IND. CODE § 9-21-17-12.  If a sidewalk is not available, a pedestrian is required to walk only on the shoulder, as far as practicable from the edge of the roadway.  IND. CODE § 9-21-17-13.  Violations of these regulations constitute Class C infractions.  IND. CODE § 9-21-17-24.  Thus, because Haywood was walking down the center of Central Avenue, the officers had probable cause to believe Haywood was violating Indiana traffic law.

Moreover, because Haywood was committing this infraction, the officers could detain him to inform him of the allegation.  IND. CODE § 34-28-5-3. After Haywood ignored the officers' request to stop, the officers then had a reasonable belief Haywood was in violation of

Indiana's Resisting Law Enforcement statute.[4]  In *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997), the Seventh Circuit, applying Indiana's Resisting Law Enforcement statute, found that as a matter of law, police officers had probable cause to arrest the plaintiff after the plaintiff disobeyed the officers' instructions to stop, and instead continued to move forward.  Similarly, the officers in this case had probable cause to believe that Haywood was knowingly resisting law enforcement when Haywood ignored the activated lights and siren, then disobeyed the orders to stop.  Therefore, Officers Shrader, Baum and Garzella had probable cause to arrest Haywood, and Defendants are entitled to summary judgment on Plaintiff's section 1983 claim for unlawful arrest.

Failure to Train/Supervise

    Defendants also move for summary judgment on Plaintiff's inadequacy of police training claim, arguing that the Village of Lake Station, the LSPD, and Chief Arnold cannot be held liable for failure to adequately train and supervise the officers because the training and supervision received by the officers did not amount to a deliberate indifference to the rights of Haywood.  In response,

---

[4]On May 27, 2002, the date of this incident, the statute provided in relevant part as follows: "[a] person who knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement, a class A misdemeanor." IND. CODE § 35-44-3-3.

Plaintiff asserts that the Village of Lake Station, LSPD, and Chief Arnold maintained a policy that provided inadequate training to its officers, failed to offer alternative means of subduing a suspect, and failed to provide diversity/sensitivity training.

In order to prevail on a failure to train claim, Plaintiff must establish:  (1) that the plaintiff's constitutional rights were violated; (2) that the governmental entity responsible had a policy or custom of failing to train its employees; and (3) that the failure to train caused the constitutional violation.  *Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997).  In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court established that a municipality may, in limited circumstances, be held liable under section 1983 for constitutional violations resulting from its failure to train police officers.  *Id.* at 387.  But the circumstances are limited:

> The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. . . . To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.

*City of Canton*, 489 U.S. at 388, 391.

The Supreme Court elucidated this standard as follows:

> Only where a failure to train reflects a "deliberate" or "conscious" choice by a

> municipality – a "policy" as defined by our prior
> cases - can a city be liable for such a failure
> under § 1983.  Monell's rule that a city is not
> liable under § 1983 unless a municipal policy
> causes a constitutional deprivation will not be
> satisfied by merely alleging that the existing
> training program for a class of employees, such
> as police officers, represents a policy for which
> the city is responsible . . . [I]t may happen
> that in light of the duties assigned to specific
> officers or employees the need for more or
> different training is so obvious, and the
> inadequacy so likely to result in the violation
> of constitutional rights, that the policymakers
> of the city can reasonably be said to have been
> deliberately indifferent to the need.  In that
> event, the failure to provide proper training may
> fairly be said to represent a policy for which
> the city is responsible, and for which the city
> may be held liable if it causes injury.

*Id.* at 389-90.  In *Cornfield By Lewis v. Consolidated High Sch. Dist.
No. 230*, 991 F.2d 1316, 1327(7th Cir. 1993), the Seventh Circuit added
that:

> In order to ensure that isolated instances of
> misconduct are not attributable to a generally
> adequate policy or training program, we require
> a high degree of culpability on the part of the
> policymaker.  Coupled with a causation
> requirement, this standard ensures that the
> violation alleged is not too far removed from the
> policy or training challenged as inadequate.
> Taken together, these two considerations amount
> to a requirement that liability be based on a
> finding that the policymakers have actual or
> constructive notice that a particular omission
> that is likely to result in constitutional
> violations.

991 F.2d at 1327.

Plaintiff does not contest that the language of the Lake Station

policies, as evidenced by the LSPD policy manual, track the language

-24-

required by the Constitution and authorities interpreting the Constitution. Rather, Plaintiff argues that the limited training required and the lack of enforcement for violations of departmental policies "demonstrates the Village and Police Department custom of putting less than fully trained officers on the street with only a car and a gun." (Pl.'s Resp. to Defs.' Mot. For Summ. J., p. 30.)

The only evidence Plaintiff cites in support of her theory is Officer Shrader's testimony that he was not trained to use a baton to subdue a suspect. On the other hand, the evidence shows that the three officers involved had basic training at the police academy and then underwent mandatory continuing education. Based upon the record, the Court cannot conclude that "the need for enhanced training [was] so obvious, and the inadequacy of training [was] so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989) (citation omitted). An isolated incident of an employee's unconstitutional activity is not enough to impose liability on a municipality. *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992). In this case, Plaintiff's sole reliance upon the conduct of the officers in this one situation (even taking Plaintiff's version of the facts as true), is not sufficient evidence to support a claim of improper training or an unconstitutional custom, policy, or practice. Because the LSPD policies at issue do not demonstrate

deliberate indifference to the rights of others, summary judgment is appropriate in favor of Defendants on Plaintiff's failure to train claim.


State Law Claims

    Assault and Battery, and Intentional Infliction of Emotional Distress

Counts XIII and IX of Plaintiff's complaint allege violations of Indiana law - specifically, assault and battery, and intentional infliction of emotion distress. Defendants contend summary judgment is proper on these claims because Plaintiff failed to comply with the notice requirement of Indiana's Tort Claims Act (the "ITCA"). In response, Plaintiff argues she substantially complied with the requirement by filing the detailed complaint within 65 days of the occurrence, well within the 180 day requirement of the ITCA.

Under the ITCA, a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision, and (2) the Indiana political subdivision risk management commission within 180 days after the loss occurs. IND. CODE § 34-13-3-8. "A person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part." IND. CODE § 34-13-3-13. It is well established that the ITCA applies to suits against employees of political subdivisions as well as the subdivisions themselves. *See Davidson v. Perron*, 716 N.E. 2d, 34 (Ind. Ct. App. 1999). Once a defendant raises failure to comply with

the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance.[5]  *Id.*  The ITCA is inapplicable to section 1983 claims, however, the ITCA applies to pendent state court claims made within a section 1983 suit.  *See Estate of Conner v. Ambrose*, 990 F. Supp. 606, 617 (N.D. Ind. 1997); *Meury v. Eagle-Union Community School Corp.*, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999).  Whether a plaintiff has complied with the ITCA is not a question of fact for the jury, but an issue of law for the court to determine.  *City of Indianapolis v. Satz*, 377 N.E.2d 623, 625 (Ind. 1978) ("[t]he trial court must make the determination of whether proper notice was given and must do so prior to trial.").

Plaintiff does not contest that she failed to give notice to the City of Lake Station and the LSPD, or the Indiana political subdivision risk management commission within 180 days of the incident.  However, she claims she complied with the ITCA because she filed and served her complaint, which contained most of the requirements for the content of the notice, within 65 days of the occurrence.  "Merely filing a complaint is insufficient notice under the ITCA."  *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 876 (N.D. Ind. 2003) (citing *Kantz v. Elkhart County Highway Dep't*, 701 N.E.2d 608, 616 (Ind. Ct. App. 1998) (holding that filing a complaint within 180 days of the occurrence did not constitute sufficient notice

---

[5]Defendants properly raised failure to comply with the ITCA's notice requirement as defense number fourteen in their answer.

-27-

under the ITCA because the legislature intended for the notice of claim and the complaint to be two separate documents, and "a complaint alone could not satisfy the notice provisions of the ITCA.")). Consequently, the filing of the complaint in this case cannot constitute notice under the ITCA. Defendants' motion for summary judgment is therefore granted as to Plaintiff's claims for assault and battery, and intentional infliction of emotional distress.

Wrongful Death and Survival Claims

Defendants also move for summary judgment on the wrongful death and survival claims. Count V asserts a claim under Indiana's Wrongful Death Act, and Count VI is a survival action. The survival statute permits a representative to pursue a claim of a decedent unless it is a claim for personal injuries to the decedent. IND. CODE § 34-9-3-1(a)(6).

First, the parties have confused the issue by arguing about the meaning of *Tracy v. Bittles*, 820 F. Supp. 396, 401-02 (N.D. Ind. 1993). *Tracy* held that because a section 1983 claim is a personal action, and because a wrongful death claim is a separate cause of action for damages sustained by a decedent's estate as a result of his death, a plaintiff's section 1983 claim could not be brought under Indiana's wrongful death statute. *Id.* However, *Tracy* concluded that a decedent's civil rights claim could be pursued in the name of his personal representative recognizing "the policies important to the

-28-

issue of survivability in [section] 1983 actions." *Id.* at 404.  Thus, *Tracy* stands for the proposition that a 1983 claim cannot be brought under Indiana's wrongful death statute; however, a section 1983 claim can be brought in the name of a personal representative.[6]  Thus, *Tracy* does not address the heart of the issue, because it does not appear from the complaint that Plaintiff is trying to bring her 1983 claims under Indiana's wrongful death statute.

Rather, the Court agrees with Defendants' argument in their reply memorandum that, because the wrongful death and survival statutes are grounded in Indiana state tort law, Plaintiff was required to comply with the notice requirement of the ITCA.  As discussed earlier, because Plaintiff failed to meet the tort claim notice provision, summary judgment is warranted for the wrongful death and survivor claims.  *See, e.g., Dameron v. City of Scottsburg, Indiana*, 36 F. Supp. 2d 821, 836-39 (S.D. Ind. 1998) (granting summary judgment in part where plaintiff's wrongful death claim was barred for failure to file proper notice under the ITCA); *LCEOC, Inc. v. Greer*, 735 N.E.2d 206, 210 (Ind. 2000) (affirming summary judgment in part where tort claim notice was absent for a government entity in wrongful death and survival action).

Family Expense Claim

---

[6]In this case, Defendants do not dispute that Plaintiff's Section 1983 claim survives Haywood's death.

Although Defendants purport to move for summary judgment on all claims, against each and every Defendant, Defendants have failed to include any argument whatsoever as to why they are entitled to summary judgment on Plaintiff's family expense claim for medical, funeral and burial expenses (Count VII). This Court will not make a party's arguments for them. *Tyler v. Runyon*, 70 F.3d 458, 464-65 (7th Cir. 1995) (recognizing that courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (refusing to consider an argument that was briefed in a "perfunctory and undeveloped[] manner"); *Weisman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) ("[J]udges should be hesitant to wander too far astray - in their search for the correct legal result - in arguments presented to them by the parties. When judges do so, one consequence is to 'diminish the responsibility of lawyers and reduce competition among them.'") (citation omitted). Therefore, summary judgment is denied on this count.

Punitive Damages

In each count of Plaintiff's complaint, Plaintiff requests punitive damages. Defendants argue that a municipality cannot be liable for punitive damages, and that the officers' conduct does not rise to the level of punitive damages.

-30-

The parties agree that punitive damage awards are not available against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-70 (1981). Thus, punitive damages are not recoverable against the Village of Lake Station or the LSPD. Additionally, only officials sued in their individual capacities may be liable for punitive damages. *See Smith v. Wade*, 461 U.S. 30 (1983). Therefore, punitive damages are not recoverable against Officers Shrader, Baum and Garzella, or Chief Arnold, in their official capacities.

Punitive damages may be awarded against officials sued in their individual capacities on a showing that the official's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. For the same reasons that summary judgment is denied on the excessive force claim, summary judgment is inappropriate on the punitive damages claim as to Officer Shrader in his individual capacity. Material issues of fact preclude summary judgment, as this Court finds that if the jury were to accept the testimony of Gaskin, and find that Haywood was not acting aggressively and was not holding any bottles prior to being shot, a reasonable juror could find that Officer Shrader demonstrated a reckless or callous disregard for Haywood's right to be free from an unconstitutional excessive use of force or use of deadly force. The Court notes that Plaintiff does not specifically argue that punitive damages could be appropriate for the individual actions of Officers Baum and Garzella. The Court

agrees that this waived argument would fail because a reasonable juror could not conclude that Officers Baum and Garzella demonstrated a reckless or callous disregard to Haywood's rights.


<u>Claims Against Chief Arnold, Individually</u>

Chief Arnold seeks summary judgment in his individual capacity. Although the complaint does not state a claim against Chief Arnold individually, he is named as a defendant in his individual capacity. Chief Arnold argues he was not sufficiently involved in any alleged violation of Haywood's rights to be held accountable under section 1983.  The Court agrees.

Section 1983 creates a cause of action based upon a defendant that was personally responsible for the deprivation.  *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).  "To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."  *Id.* (quotation omitted).   Such a requirement mandates that, to be liable, a supervisor must have had some personal involvement, "essentially directing or consenting to the challenged conduct."  *J.H. ex. rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) (quotation omitted).  In this case, there is no evidence that Chief Arnold knew about or directed the challenged conduct by his officers, and Plaintiff's response to Defendants' motion for summary judgment does not contend otherwise.  The Court therefore grants Defendants' motion

for summary judgment as to the section 1983 claims against Chief Arnold.

Finally, as argued by Defendants, Chief Arnold cannot be found individually liable for the allegedly unconstitutional policy of the LSPD because there is no evidence that Chief Arnold's approval of the policies violated clearly established rights. *See Kellogg v. City of Gary*, 562 N.E.2d 685, 703 (Ind. 1990) (finding non-judicial public officials are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights).


CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Plaintiff's claim of unreasonable seizure and unconstitutional use of excessive force in violation of section 1983 against Officer Baum and Garzella (Count I), Plaintiff's claim of unreasonable seizure and unconstitutional use of force in violation of section 1983 against Officer Baum (Count II), Plaintiff's claim of false arrest in violation of section 1983 against Officers Shrader, Baum, and Garzella (Count III), Plaintiff's failure to train and supervise claim against Defendants Village of Lake Station, the Lake Station Police Department, and Chief Richard Arnold (Count IV), Plaintiff's wrongful death claim against Officers Shrader, Baum, and Garzella (Count V),

Plaintiff's survival claim against Officers Shrader, Baum and Garzella (Count VI), Plaintiff's intentional infliction of emotional distress claim against Officers Shrader, Baum, and Garzella (Count VIII), Plaintiff's assault and battery claim against Officers Shrader, Baum, and Garzella (Count IX), Plaintiff's claims for punitive damages against Defendants Village of Lake Station, the Lake Station Police Department, Chief Arnold, Officers Baum and Garzella, and Officer Shrader in his official capacity, and Plaintiff's claims against Chief Arnold, individually, and the Clerk is **ORDERED** to **DISMISS** those claims **WITH PREJUDICE.**  The motion is **DENIED** as to Plaintiff's claim of unreasonable seizure and unconstitutional use of excessive force in violation of section 1983 against Officer Shrader (Count I), Plaintiff's family expense claim for medical, funeral and burial expenses (Count VII), and Plaintiff's claim for punitive damages against Officer Shrader in his individual capacity, and these claims **REMAIN PENDING.**


DATED:  August 22, 2006          /s/RUDY LOZANO, Judge
                                 **United States District Court**

-34-